185 N.J. Super. 163 (1982)
447 A.2d 933
UNITED PROPERTY OWNERS ASSOCIATION OF BELMAR, PLAINTIFF, AND DANIEL STRAM, DENNIS FRANK AND VIC PASQUARIELLO, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF BELMAR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1981.
Decided June 15, 1982.
*165 Before Judges BOTTER, ANTELL and FURMAN.
Peter V. Cappiello, Jr. argued the cause for appellant (Labrecque, Parsons & Bassler, attorneys; Peter V. Cappiello, Jr., on the brief).
Joseph Hillman, Jr., argued the cause for respondent (Hillman, Badach & Sullivan, attorneys; Joseph Hillman, Jr., on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
The principal issue on this appeal is the constitutionality of an amendment to Belmar's zoning regulations prohibiting the temporary or seasonal rental of residential property in all parts of the borough except in the Resort-Residential (RR) and Resort-Business (RB) zones located in the easterly two blocks adjacent to the ocean. The purpose of the amendment, enacted on January 8, 1980 by Ordinance 1979-16, was to reverse the spread of seasonal rental practices into areas of the borough that were formerly stable, traditional family neighborhoods and to restrict the rental of homes to large groups of unrelated people. Belmar's *166 previous effort to combat summertime group rentals foundered in Kirsch Holding Co. v. Manasquan, 59 N.J. 241 (1971), in which Belmar's ordinance was considered on its companion appeal entitled State, Boro. of Belmar v. Schier.
Appellants[1] are three individual owners of property in Belmar. They brought this action to challenge certain provisions of borough ordinances affecting the rental of their residential properties. They appeal from that part of the final judgment which rejected their attack upon (a) the definition of "family" in Ordinance 1979-16 by which the rental restrictions were established; (b) Ordinance 1979-19 and 1979-20 for failing to provide a time limit for the issuance of a certificate of occupancy or license for rented dwelling units, and (c) Ordinance 1979-20, § 13-2.5, for establishing a license and reinspection fee structure which plaintiffs contend discriminates against renters of seasonal residential units.[2]
The principal issue concerns the limitation on seasonal or temporary rentals. The borough presented evidence to show that summer rentals were once confined primarily to the hotel and boarding house zone located mainly within three blocks of the beachfront, but in recent years they progressively encroached into residential areas occupied by permanent residents. Seasonal use transformed traditional family neighborhoods into areas of transiency. Even the type of summer rentals changed. With increasing frequency houses were being rented to groups of young, unrelated adults. The phenomenon and its associated *167 problems were described in some detail in Kirsch Holding Co. v. Manasquan, supra, 59 N.J. at 243-245, and need not be repeated here.
Belmar has attempted to deal with the problem by restricting seasonal or temporary rentals to a narrow oceanfront zone and by prohibiting such rentals throughout the rest of the borough. It has done this by definitions which restrict residential occupancy except in the RR and RB zones as follows:

Family. A family shall consist of a group of persons, whether related or unrelated, not larger in number than any dwelling occupied or to be occupied by such group of persons, whether related or unrelated, may accommodate under the applicable housing code provisions, which constitutes a single bona fide housekeeping unit. This definition shall not include any society, club, fraternity, sorority, association, lodge, organization, or similar group. A single bona fide housekeeping unit for purposes of this ordinance is a relationship between persons for maintaining a common household or family relationship on a permanent basis or for indefinite period of time. It does not include any group of persons, whether related or unrelated, whose use or occupancy of any dwelling is or is intended to be temporary or seasonal in duration.

Temporary or Seasonal Residential Use. The use or occupancy of residential premises pursuant to an oral or written agreement for the letting, renting or leasing of any residential premises for a specific term of not more than one year, where said use and occupancy is not, or is not intended to be the permanent place of residence of the person or persons using or occupying the premises. Any agreement to let, rent or lease any premises which limits occupancy primarily between April First and October First of any year, or which requires the payment of all or substantially all of the rent for the entire term in advance, or for more than one month in advance, or the rent paid or to be paid is based upon fair market value for summer rentals, is deemed to be a Temporary or Seasonal Residential use.
In brief, except in the resort or seasonal rental zone, residential occupancies are limited to related or unrelated persons who constitute one bona fide housekeeping unit, maintaining a common household on a permanent basis or for an indefinite period. Any rental for one year or less is prohibited unless the occupants intend the dwelling unit to be their permanent place of residence. Seasonal, summertime rentals are prohibited. Thus, for example, as we interpret the ordiance, a family, as defined therein, could rent a house on a month-to-month basis outside of *168 the RR and RB zones so long as it is intended to be their permanent or indefinite place of residence.
This ordinance and Belmar's ordinance which was considered in Kirsch Holding Co., supra, contain some similar features. In Kirsch Holding Co. the court condemned as arbitrary and unreasonable a regulation generally limiting occupancy in one-family, two-family and multi-family zones to persons related by blood or marriage or to a number of individuals living "under one head, whose relationship is of a permanent and distinct domestic character, and cooking as a single housekeeping unit," excluding a fraternity, sorority, club or society and excluding "a group of individuals whose association is temporary and resort-seasonal in character or nature." The restrictions did not apply to licensed rooming houses, hotels and motels, or to religious orders. The court found that the attempt to ban "obnoxious group rentals" unreasonably prohibited innocuous occupancies by other groups as well, such as two unrelated families of spouses and children, groups of widows, widowers, etc. 59 N.J. at 248. Thus, the court found that the attempt to ban "unruly unrelated groups of young adults who indulge in anti-social behavior," id. at 251, unreasonably excluded temporary or seasonal occupancy by non-offensive groups of unrelated persons. The practice was held to be an excessive limitation on the use of private property and was condemned. In suggesting that "vigorous and persistent enforcement of general police power ordinances and criminal statutes" be used to curb disturbances of the peace, and that housing regulations could be adopted to limit the number of occupants in relation to sleeping and bathroom facilities, the court viewed the ordinance principally as a device to curb undesirable conduct. Shifting its focus somewhat, Belmar now insists that it wants to purge transients from all but a limited area and wants to restore the peace and quiet and other characteristics of neighborhoods where people will live in relative permanency.
*169 We do not quarrel with Belmar's goal. See Berger v. State, 71 N.J. 206, 222-227 (1976); Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). But the question remains whether this purpose has been pursued by means that are arbitrary or unreasonably restrict the use of property. Zoning laws are designed to control types of uses in particular zones and are not ordinarily concerned with periods of occupancy or the property interest of the occupants. Bridge Park Co. v. Highland Park, 113 N.J. Super. 219 (App.Div. 1971).[3]But cf. Hantman v. Randolph Tp., 58 N.J. Super. 127, 135-138 (App.Div. 1959), certif. den. 31 N.J. 550 (1960).
In Berger v. State, supra, our Supreme Court spoke sympathetically about the right of municipalities to preserve residential neighborhoods possessing characteristics of stability, permanence, quiet and repose. It suggested that this goal could be achieved by restricting single-family dwellings to a reasonable number of persons, related or unrelated, who constitute "a bona fide single housekeeping unit." 71 N.J. at 225. Speaking for the court, Justice Mountain said:
While we have not hesitated to strike down zoning ordinances that fail to satisfy the demands of substantive due process, we are not unmindful of the problem confronting many municipalities which desire to maintain a prevailing family environment. Their need is to enact ordinances that will both withstand judicial scrutiny, and at the same time exclude uses that may impair the environment. We believe a satisfactory resolution of this problem would result, were local governments to restrict single family dwellings to a reasonable number of persons who constitute a bona fide single housekeeping unit. If such *170 a requirement were incorporated into zoning ordinances, it would not only perpetuate the stability, permanence and other beneficial attributes long associated with single family occupancy but also preclude uses closely approximating boarding houses, dormitory and institutional living. Such an enactment  if carefully drawn  would be both reasonably related to the end of maintaining a peaceful family residential style of living  an end we uphold as a legitimate goal of zoning  and yet be neither excessive nor overreaching in its sweep.
The concept of zoning for a single housekeeping unit is not novel. Many zoning ordinances have already gone beyond the notion of restricting single family dwellings to a conventional family unit and have permitted occupancy by a limited number of unrelated persons living together as a single housekeeping unit.... [71 N.J. at 225; footnote omitted]
Belmar has incorporated in its definition of family attributes of a bona fide single-housekeeping unit approved in Berger v. State. However, it has gone beyond that concept by precluding temporary or seasonal rentals  rentals for one year or less not intended to be the permanent dwelling place of the renter. This is an extreme limitation on rights of ownership of private property, and it appears arbitrary in many respects. For example, a regular, permanent, year-round resident who wishes to travel abroad one summer is precluded from making even a rare summer rental of his property. On the other hand, a family that has maintained a home in Belmar as their summer residence would now be precluded from renting the property for the remainder of the year since they would not want to rent it out for an indefinite period. Similarly, someone whose employment requires a temporary change in location for a year or less could not rent out his residence during that period of absence. If a Belmar resident dies and his home becomes vacant, his executor could not rent it out temporarily until it could be sold or otherwise disposed of, despite the undesirability of leaving homes unoccupied for long periods of time. These are some obvious examples of the unreasonable and undesirable results achieved by the prohibition on temporary or seasonal rentals.
Although in theory we sympathize with Belmar's desire to achieve more stable neighborhoods, we are forced to the *171 conclusion that the time limitations imposed on renting residential property are impermissibly arbitrary and constitute an unreasonable restraint on the use of private property. We know of no case in which a zoning ordinance of this type has been adopted. We are led to the conclusion, therefore, that Belmar may pursue its goal to the extent that it has defined a family for occupancy purposes as persons constituting a bona fide housekeeping unit maintaining a common household or family relationship on a permanent basis or for an indefinite period of time. This will have the effect of barring rentals by groups of unrelated adults temporarily living together. It will tend to restore the atmosphere of family living outside of the seasonal resort zones, although the period of occupancy by such "family" units cannot be limited as provided by Ordinance 1979-16.
We turn now to the remaining issues in the case. Plaintiffs are concerned that the lack of time limits in the ordinance for inspection and licensing of rental dwelling places will result in unnecessary delay and consequent losses in their rental income. The evidence does not support this contention, and the ordinance cannot be deemed facially invalid because the municipality may not fulfill its licensing functions promptly and efficiently. We also reject plaintiffs' contention that the trial judge erred in upholding the licensing fee schedule against their charge of discrimination. There was ample credible evidence to support the trial judge's findings that the flood of applications for summer rentals requires the municipality to hire additional personnel to handle the volume in a short period of time and that increased costs justify the differential in fees assessed.
We affirm the judgment below except that it is modified so as to invalidate provisions in Ordinance 1979-16 which preclude temporary or seasonal residential use or occupancy, by lease or otherwise, as defined in the ordinance, outside the RR and RB zones.
NOTES
[1] Before trial a partial summary judgment was entered dismissing the claims of plaintiff United Property Owners Association of Belmar and entering judgment in favor of the individual defendants who were borough commissioners.
[2] The final judgment eliminated other issues in the case by incorporating consent provisions based upon a proposed amendment of certain ordinance sections dealing with reinspections, right of entry and revocation of licenses.
[3] In discussing the purposes of zoning and the terms of N.J.S.A. 40:55-30, the court in Bridge Park Co. v. Highland Park, supra, said, "A quick reading of this section discloses no power granted to a municipality to regulate the ownership of buildings or the types of tenancies permitted." 113 N.J. Super. at 221. The court invalidated an attempt to rule out condominium ownerships on the basis of the zoning power by requiring multi-family dwellings to be held "under single ownership." Id. Commenting on this case, the court in Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 280 (1976), reprinted, 80 N.J. 6, 36-37, said that the attempt to regulate ownership without altering the use of the property "merely affected the location of title  a result which bears no relation to the functions of zoning." 80 N.J. at 37.