599 A.2d 1309

OCEAN COUNTY BOARD OF RELATORS, WILLIAM BUCKLEY AND TOM LEWIS, PLAINTIFFS, v. TOWNSHIP OF LONG BEACH, DEFENDANT.

Superior Court of New Jersey
Law Division Ocean County

Decided May 10, 1991.

444

*Thomas P. Butz* for plaintiffs (*Schuman, Butz, Bezdecki & Scalia*).

*James E. Bishop* for defendant (*Shackleton, Hazeltine and Bishop*).

SERPENTELLI, A.J.S.C.

In this action in Lieu of Prerogative Writs the plaintiffs attack the validity of provisions of the land use ordinances of the Township of Long Beach regulating what are commonly known as "group rentals".

The plaintiffs are the Ocean County Board of Realtors, a nonprofit trade association whose membership is comprised of licensed real estate brokers, and two individual brokers who are members of the association. The plaintiff Buckley is also a resident and property owner within the Township of Long Beach.

Three portions of the land use ordinances are under scrutiny. Section 18–2.17 defines the term "family" as follows:

> One or more persons related by blood or marriage occupying a dwelling unit and living as a single, non-profit housekeeping unit or a collective number of individuals living together in one house, including servants, whose relationship is of a permanent and distinct domestic character and cooking as a single housekeeping unit. This definition shall not include any society, club, fraternity, sorority, association, lodge, combine, federation, group, coterie or organization.

This restriction has apparently been a part of the Long Beach ordinances since November, 1968. On January 18, 1991, the township adopted an amendment to its land use ordinances adding the following sections:

3-26. Aiding and Abetting. It shall be unlawful for any person to assist, aid or abet another in committing a violation of the Township zoning or building code ordinances.

3-27. It shall be unlawful for any person to negotiate a lease, the provisions of which will permit occupancy or use of the leased premises in violation of the zoning ordinance or building code of the Township of Long Beach.

It is alleged that the purpose of the adoption of the 1991 ordinance is to provide a method to prosecute persons, particularly real estate brokers and salespersons, who might participate in leasing property to groups who do not fit within the definition of family as quoted above. Consequently, the plaintiffs challenge both the definitional section of the zoning ordinance and the amendments relating to aiding and abetting a violation of the zoning ordinance.

The defendant asserts that this action is premature, alternatively that it is time barred and finally that recent decisions of our appellate courts enable this court to read the definition of "family" in a manner which would sustain its validity.

■ The timeliness issues raised by the defendant should be addressed first. The township argues that this action should not be brought until one of the members of the plaintiff association or other real estate broker or salesperson is prosecuted in municipal court for violation of the ordinance. The plaintiffs are making a direct constitutional attack and case law does not require, in such circumstances, that the challenge be preceded by a prosecution for violation of the ordinance. Our courts have entertained litigation concerning group rental ordinances without requiring prior municipal prosecution. *Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241, 281 *A.*2d 513 (1971); *United Property Owners Ass'n. of Belmar v. Borough of Belmar,* 185 *N.J.Super.* 163, 447 *A.*2d 933 (App. Div.1982), *cert. denied,* 91 *N.J.* 568, 453 *A.*2d 880 (1982).

■ Conversely, the defendant contends that this suit is time barred noting that the definition of family emanated from a 1968 ordinance. Defendant alleges that the plaintiffs did not contest the constitutionality of the definition until the 1991 ordinance relating to aiding and abetting was adopted. The defendant concludes that this action is prohibited under *R.* 4:69–6(a) which requires that prerogative writ suits be brought within 45 days after the accrual of the right to the review, hearing or relief sought.

■ Plaintiffs acknowledge that they are out of time but argue that the relaxation provision of *R.* 4:69–6(c) should be applied here. That rule allows the court to enlarge the 45–day time frame "where it is manifest that the interest of justice so requires." Our cases instruct that in determining whether the "interest of justice" would be served by relaxation, the decisional law should be examined since that standard was meant to incorporate exceptions carved out by earlier decisions which allowed relaxation in certain cases. *Schack v. Trimble,* 28 *N.J.* 40, 47–48, 145 *A.*2d 1 (1958). Those exceptions include cases involving (1) important and novel constitutional issues; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification. *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 586, 350 *A.*2d 19 (1975).

This case concerns two of the exceptions. First, important considerations of due process and equal protection are implicated. The right to own and alienate property is constitutionally guaranteed. Early cases evaluating group rental ordinances found that the restraints were excessively broad and created disparity of treatment which bore no rational relationship to land use regulation or to the conduct of owners and users of property. *Gabe Collins Realty, Inc. v. City of Margate,* 112 *N.J.Super.* 341, 349, 271 *A.*2d 430 (App.Div.1970); *Larson v. Mayor and Council of Borough of Spring Lake Heights,* 99

*N.J.Super.* 365, 374–75, 240 *A.*2d 31 (Law Div.1968). As will be discussed, many subsequent decisions reached the same result. Accordingly, the court should determine whether the restrictions adopted by the township create constitutionally permissible land use controls.

Second, there is a significant public interest to be served by adjudicating the validity of the ordinances. The alleged evil of these enactments will not only touch the economic well being of the plaintiffs but also has the potential of affecting all members of the association, homeowners and others who could be subjected to an ongoing deprivation of their rights if the court should refuse to entertain this case. Our Supreme Court has recently recognized that these are relevant considerations when weighing the propriety of enlarging the time requirement of *R.* 4:69–6(a). *Reilly v. Brice,* 109 *N.J.* 555, 559, 538 *A.*2d 362 (1988).

■ The creation of the in lieu proceeding by the Constitution of 1947 was not intended to discard "the substantive law of the former prerogative writs as a means of safeguarding individual rights against public officials and governmental bodies" but rather as a means of curing the procedural defects of the old system. *Ward v. Keenan,* 3 *N.J.* 298, 308, 70 *A.*2d 77 (1949). In light of the important constitutional and public issues involved, the court will relax the 45 day requirement and turn to a decision on the merits.

At first blush, the opinion in *Kirsch Holding Co. v. Borough of Manasquan, supra,* is dispositive of the controversy before the court. The language employed by Long Beach in its ordinance closely mirrors the definition of "family" found to be unconstitutional in *Kirsch.* There the stricken Belmar ordinance read:

a. One or more persons related by blood or marriage occupying a dwelling unit and living as a single, nonprofit housekeeping unit.

b. A collective number of individuals living together in one house under one head, whose relationship is of a permanent and distinct domestic character, and cooking as a single housekeeping unit. This definition shall not include any

society, club, fraternity, sorority, association, lodge, combine, federation, group, coterie, or organization, which is not a recognized religious order, nor include a group of individuals whose association is temporary and resort-seasonal in character or nature. [59 *N.J.* at 247, 281 *A*.2d 513]

The Manasquan ordinance involved in *Kirsch* was substantially identical to the Belmar ordinance. The Court concluded that the ordinances had precluded so many harmless dwelling uses in their effort to ban seasonal rentals by unruly, unrelated groups of young people that the enactments were unreasonable, arbitrary or capricious. The Court noted that two unrelated families of spouses and children could not share a summer cottage in either Belmar or Manasquan under the terms of the ordinances unless they had a permanent living relationship elsewhere. Likewise, small unrelated groups of people who did not meet the test of permanency—*i.e.*, widows, widowers, spinsters, bachelors or even judges—would be excluded. *Id.* at 248, 281 *A*.2d 513. The Court found the ordinances to be "sweepingly excessive" and "legally unreasonable" and struck them in their entirety. *Id.* at 252, 281 *A*.2d 513. Although the Court expressed sympathy for the plight of the municipalities in their effort to control obnoxious, antisocial behavior by seasonal inhabitants, it suggested that the use of the zoning power was not the solution. The Court observed:

Ordinarily obnoxious personal behavior can best be dealt with officially by a vigorous and persistent enforcement of general police power ordinances and criminal statutes of the kind earlier referred to. Zoning ordinances are not intended and cannot be expected to cure or prevent most anti-social conduct in dwelling situations. [*Id.* at 253–54, 281 *A*.2d 513]

The legal principles enunciated in *Kirsch* have since been validated by our Supreme Court as "clear and well settled." *Borough of Glassboro v. Vallorosi*, 117 *N.J.* 421, 426, 568 *A*.2d 888 (1990); *Berger v. State*, 71 *N.J.* 206, 224, 364 *A*.2d 993 (1976).

Since the decision in *Kirsch*, our courts have struggled to accommodate the competing interests of municipalities and property owners. On the one hand, our courts have recognized the right of a municipality to "secure and maintain 'the blessings of quiet seclusion' and to make available to its inhabitants

the refreshment of repose and the tranquillity of solitude." *Berger, supra,* 71 *N.J.* at 223, 364 *A.*2d 993. On the other hand, our courts have consistently invalidated ordinances which unnecessarily and excessively restrict the use of private property. Thus, proscriptions which limit the persons who may occupy a single family dwelling in such a manner as to bar numerous potential occupants who pose no threat to the style of family living regularly have been stricken. *Id.* at 223–24, 364 *A.*2d 993; *State v. Baker,* 81 *N.J.* 99, 107, 113–15, 405 *A.*2d 368 (1979).

In *Berger, supra,* the Court reviewed an ordinance which defined "family" as "one person living alone or two or more persons related by blood, marriage or adoption and living together as a single unit in one house...." 71 *N.J.* at 217, 364 *A.*2d 993. The State of New Jersey sought to establish a group home for multi-handicapped children. The plaintiffs claimed that the ordinance prevented that use because of the definition of "family" contained within the zoning ordinance. The Supreme Court found the definition unreasonable. *Id.* at 224, 364 *A.*2d 993. However, in *dictum* the Court seemed to suggest a solution for this recurring municipal dilemma. It adduced that an acceptable definition of "family" for zoning purposes could result if local governments confined their ordinances to "a reasonable number of persons who constitute a bona fide single housekeeping unit." *Id.* at 225, 364 *A.*2d 993. The Court said:

.... If such a requirement were incorporated into zoning ordinances, it would not only perpetuate the stability, permanence and other beneficial attributes long associated with single family occupancy but also preclude uses closely approximating boarding houses, dormitory and institutional living. Such an enactment—if carefully drawn—would be both reasonably related to the end of maintaining a peaceful family residential style of living—an end we uphold as a legitimate goal of zoning—and yet be neither excessive nor overreaching in its sweep. [*Id.*]

Three years later the Supreme Court in *State v. Baker, supra,* had the opportunity to address an ordinance which limited occupancy in part to the number of persons using the unit. The ordinance in dispute defined "family" as:

One (1) or more persons occupying a dwelling unit as a single non-profit housekeeping unit. More than four (4) persons.... not related by blood, marriage, or adoption shall not be considered to constitute a family. [81 *N.J.* at 104, 405 *A.*2d 368]

The Court struck the ordinance finding that it improperly utilized criteria based upon biological or legal relationships in such a manner as to ban a plethora of uses which pose no threat to the end sought to be achieved. Conversely, it found that the classification legitimized many uses which defeated the goals of the ordinance. *Id.* at 107, 405 *A.*2d 368. The Court then addressed the suggestion in *Berger* that the municipality could validly restrict single family dwellings to a reasonable number of persons who constitute a bona fide single housekeeping unit. The *Baker* Court said:

However, we there were dealing with an institutional use in a familial setting and spoke of 'persons' rather than unrelated individuals. In light of today's discussion, we conclude that the use of the word 'reasonable' was intended to imply space-related limitations. Thus, *Berger* merely legitimizes space-related restrictions of general application and, as such, is wholly consistent with our opinion today. [citations omitted] [*Id.* at 113, 405 *A.*2d 368]

*Baker* reaffirmed the Court's prior holdings in *Kirsch* and *Berger.*

Defendant here concedes that its ordinance would be nullified under a strict reading of the *Kirsch* decision since the ordinances there under review are very similar to the enactments now before the court. However, defendant contends that more recent decisions establish permanency as the key element in defining a bona fide single housekeeping unit and serve to validate its legislation. The defendant cites *Borough of Glassboro v. Vallorosi, supra, Open Door Alcoholism Program, Inc. v. Board of Adjustment of New Brunswick,* 200 *N.J.Super.* 191, 491 *A.*2d 17 (App.Div.1985) and *United Property Owners Ass'n. of Belmar v. Borough of Belmar, supra.* Long Beach notes that its definition permits occupancy of a dwelling unit by a "collective number of individuals living together in one house.... whose relationship is of a *permanent* and distinct domestic character and cooking as a single housekeeping unit." [emphasis added]

In particular the defendant relies upon the *United Property Owners* case. There, Belmar again attempted to control the spread of seasonal rentals into areas of the borough that were formerly stable, traditional family neighborhoods by restricting such rentals to a narrow oceanfront zone and prohibiting them throughout the rest of the borough. The court described the effort:

> In brief, except in the resort or seasonal rental zone, residential occupancies are limited to related or unrelated persons who constitute one bona fide housekeeping unit, maintaining a common household on a permanent basis or for an indefinite period. Any rental for one year or less is prohibited unless the occupants intend the dwelling unit to be their permanent place of residence. Seasonal, summertime rentals are prohibited. [185 *N.J.Super.* at 167, 447 *A.*2d 933]

Though the Court found that Belmar had characterized "family" in terms of a bona fide single housekeeping unit, as suggested in *Berger, supra,* it determined that Belmar's total preclusion of temporary or seasonal rentals—described as those for one year or less not intended to be the permanent dwelling place of the renter—was an arbitrary prohibition based on a fixed time period. Therefore, the court voided the regulation. However, in *dictum,* the court took its chance at proffering an approach which might alleviate the group rental problem:

> .... We are led to the conclusion, therefore, that Belmar may pursue its goal to the extent that it has defined a family for occupancy purposes as persons constituting a bona fide housekeeping unit maintaining a common household or family relationship on a *permanent basis* or for an indefinite period of time. This will have the effect of barring rentals by groups of unrelated adults temporarily living together. It will tend to restore the atmosphere of family living outside of the seasonal resort zones, although the period of occupancy by such 'family' units cannot be limited as provided by [the ordinance]. [*Id.* 185 *N.J.Super.* at 171, 447 *A.*2d 933] [emphasis added]

The court will return to this proposal after reviewing the decisions in *Open Door* and *Glassboro.* These cases are limited to their facts and add little to the *United Property* analysis. In *Open Door*, the ordinance delineated a "family" as "one or more persons related by blood or marriage, or up to three unrelated individuals, living as a single housekeeping unit in a dwelling unit." 200 *N.J.Super.* at 197, 491 *A.*2d 17. The court

first recognized that limiting a single family unit to occupancy by no more than three unrelated individuals living as a single housekeeping unit is improper. It then found that, though the ordinance made no mention of permanency, the controlling factor in deciding if individuals are living together as a single housekeeping unit is whether the residents bear the generic character of a relatively permanent functioning family unit. On the facts before it, the court held that residents of a halfway house for recovering alcoholics did not fit that description. *Id.* at 200, 491 *A.*2d 17.

In *Glassboro*, "family" was defined as "one or more persons occupying a dwelling unit as a single non-profit housekeeping unit, who are living together as a stable and permanent living unit, being a traditional family unit or the functional equivalency thereof." 117 *N.J.* at 423, 568 *A.*2d 888. The Supreme Court held that the evidence supported the trial court's ruling that ten unrelated male college students were a "family" within the meaning of the borough ordinance. The Court declined to pass upon the constitutional challenge, limiting its holding to the narrow issue of whether there was sufficient credible evidence in the record to sustain the trial court's finding that the occupancy satisfied the ordinance. However, in closing its opinion the Court did revisit its earlier analysis in *Kirsch* and *Baker*, stating that "[i]t also bears repetition that noise and other socially disruptive behavior are best regulated outside the framework of municipal zoning." *Id.* 117 *N.J.* at 433, 568 *A.*2d 888.

In this court's view, the cases relied upon by the defendant have made no change in the basic principles which must be utilized to assess the validity of ordinances attempting to regulate *through zoning* the occupancy of dwelling units by certain types of users. To that extent, the court could dispose of the dispute before it merely by holding that the decision in *Kirsch* is controlling since the ordinances here and in *Kirsch* are virtually indistinguishable. Alternatively, even if it can be argued that the *United Property* case has provided municipali-

ties with a new hope for relief in some instances, the result in this case cannot be altered.

It should be observed that the ordinance in *United Property* made no distinction between related and unrelated persons. Indeed, it expressly treated both groups in the same manner. By contrast the Long Beach ordinance has separate criteria for related and unrelated persons. The related persons merely have to be affiliated by blood or marriage and occupy a dwelling unit as a single nonprofit housekeeping unit. Unrelated persons must live together in one house in a *permanent* relationship. In short, there is no requirement of permanency for related persons. Consequently, the ordinance allows related individuals to occupy a dwelling unit within the single family zone for any period of time regardless of the permanency of their relationship while unrelated persons are denied that right unless they establish the permanency of their relationship. Presumably, a seasonal rental by unrelated persons, the real issue in dispute, would not meet the test of permanency. As a result, two unrelated families of spouses and children or groups of widows, widowers, spinsters, bachelors or judges, could rent a dwelling unit in Long Beach if any of these groups lived somewhere else on a permanent basis but they could not obtain a summer rental in Long Beach if they did not live together on a permanent basis elsewhere. Many other examples of the irrational classifications resulting from the defendant's ordinance could be demonstrated.

Once again, there is a "fatal flaw in attempting to maintain a stable residential neighborhood through the use of criteria based upon biological or legal relationships" and "such classifications operate to prohibit a plethora of uses which pose no threat to the accomplishment of the end sought to be achieved." *Baker, supra,* 81 *N.J.* at 107, 405 *A.*2d 368. Thus, even if a "permanency" standard could be used to develop a sustainable ordinance, the court finds that the ordinance before it is still sweepingly excessive and legally unreasonable.

In passing, it should be recognized that the *dictum* in *United Property* appears to be inconsistent with its holding. As noted, the court suggests that the municipality might pursue its goal of controlling group occupancy to the extent that it describes a family as persons constituting a bona fide housekeeping unit maintaining a common household or family relationship on a permanent basis or for an indefinite period of time. Putting aside the propriety of the zoning ordinance attempting to regulate the period of occupancy, the court's comment could apply both to groups of unrelated adults and related adults temporarily living together. While the court's opinion says that the ordinance it recommends would "have the effect of barring rentals by groups of *unrelated* adults temporarily living together", [185 *N.J.Super.* at 171, 447 *A*.2d 933] [emphasis added], in actuality it would apply equally to *related* and *unrelated* persons who are not already in a permanent living arrangement.

In any event, if the import of the *dictum* is that seasonal or temporary rentals could be precluded in single family zones, the proposal would create circumstances which the court in *United Property* found to be arbitrary at the preceding page of its opinion. *Id.* at 170, 447 *A*.2d 933. For example, a permanent, year-round resident who wanted to travel abroad for one summer would not be allowed to make a summer rental. If a Belmar resident died and his or her home became vacant, the executor could not rent it temporarily until it was sold unless it was for an indefinite period or on a permanent basis as those terms are used in the proposed ordinance. Restrictions of this nature must respect the constitutionally protected right to own and alienate property. As the *United Property* case recognizes, extreme limitations on the right of ownership of private property will be found to be arbitrary. *Id.*

Therefore, despite the best efforts of our courts to minimize the difficulties that municipalities experience from group rentals, an acceptable zoning option is yet to be found. Certainly the Long Beach ordinances do not do the job. Prudence being

the better part of valor, this court will not propose still another alternative although it, too, sympathizes with the plight of our communities. As much as modern lawyers and jurists abjure Latin phrases, there are times when the ancient language says it best. *Omnis definitio in jure civili periculosa est, parum est enim ut non subverti possit*—every definition in the law is dangerous because there is little that cannot be subverted.

In summary, the court concludes that Section 18–2.17 is invalid for the reasons expressed above and that Long Beach may not institute any proceeding under Sections 3–26 or 3–27 insofar as the action would rely upon the definition of family contained in Section 18–2.17.

599 A.2d 1315
STATE OF NEW JERSEY, PLAINTIFF, v.
ROBERT DEJESUS, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Camden County

Decided August 9, 1991.