# SEBASTIAN GANGEMI ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD
## (SC 16208)

McDonald, C. J., and Borden, Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.[1]

*(Three justices dissenting in one opinion)*

Argued June 1, 2000—officially released January 2, 2001

---

[1] This appeal originally was heard by a panel consisting of Justices Borden, Norcott, Katz, Sullivan and Vertefeuille. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Chief Justice McDonald and Justice Palmer were added to the panel, and they have read the record, briefs and transcript of the original oral argument.

*John E. Curran*, for the appellants (plaintiffs).

*Richard H. Saxl*, for the appellee (defendant).

*John F. Fallon*, for the appellees (intervening defendants).

### Opinion

BORDEN, J. The dispositive issue in this certified appeal is whether the continued maintenance of a certain "no rental" condition imposed on a zoning variance granted to the plaintiffs in 1986 by the defendant, the zoning board of appeals of the town of Fairfield (board), which the plaintiffs did not challenge by direct appeal at that time, violates the public policy against restraints against alienation of property. The plaintiffs, Sebastian Gangemi and Rebecca J. Gangemi, appeal, pursuant to our grant of certification, from the judgment of the Appellate Court affirming the judgment of the trial court. The trial court dismissed the plaintiffs' appeal from the defendant's denial of their application to invalidate the no rental condition for lack of subject matter jurisdiction.[2] The plaintiffs claim that the trial court improperly dismissed their appeal because the continued maintenance of the condition violates the strong public policy against restraints on the alienation of

---

[2] Judith Kramer and Barry Kramer, the owners of the property abutting the property owned by the plaintiffs, intervened as defendants in the trial court, and have participated as such in this appeal. Hereafter, we refer to the board and Judith Kramer and Barry Kramer collectively as the defendants.

property.[3] We agree. Accordingly, we reverse the judgment of the Appellate Court.

In 1986, the plaintiffs secured a zoning variance from the board, one condition of which was "[o]wner occupancy only."[4] In 1996, the Fairfield zoning enforcement officer determined that the plaintiffs were violating the condition by renting their property, and he ordered them to comply with the condition. The plaintiffs applied to the board requesting that it invalidate the condition. The board denied the application. The plaintiffs appealed to the trial court, which rendered judgment dismissing the appeal. The plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. *Gangemi* v. *Zoning Board of Appeals*, 54 Conn. App. 559, 736 A.2d 167 (1999). This certified appeal followed.[5]

The procedural history and certain of the undisputed facts of the case are set forth in the opinion of the Appellate Court as follows. "[T]he plaintiffs are the owners of property located at 863 Fairfield Beach Road in Fairfield. On March 13, 1986, the plaintiffs filed an application with the board requesting a variance in the setback requirements from the Fairfield zoning regula-

---

[3] The plaintiffs also claim that: (1) the condition was void as being personal in nature; (2) the condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it; and (3) the condition constituted an unconstitutional taking of the plaintiffs' property without just compensation. In view of our conclusion that the continued maintenance of the condition violates public policy, we need not, and do not, consider any of these other claims.

[4] The parties and the Appellate Court have characterized this as a "no rental" condition, prohibiting the plaintiffs from renting the property in question. For purposes of consistency, we adhere to this characterization.

[5] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court lacked subject matter jurisdiction over the plaintiffs' appeal from the decision of the zoning board of appeals' refusal to invalidate the 'no rental' condition on the 1986 zoning variance?" *Gangemi* v. *Zoning Board of Appeals*, 251 Conn. 911, 739 A.2d 1248 (1999).

tions. The variance that the plaintiffs sought would have allowed them to enlarge their nonconforming home[6] and also would have allowed them to convert the home from summer use to year-round use. The plaintiffs asserted that to complete the conversion of the home, they needed to enclose the existing porch, enlarge the bathroom and construct a furnace room. In their application, the plaintiffs indicated that they '[intended] to use the property for family use only on a year-round basis.'

"The board conducted a public hearing on the plaintiffs' application. On May 1, 1986, the board granted the plaintiffs' application subject to the following conditions: (1) the plaintiffs would provide two off-street parking spaces; and (2) the use of the home would be limited to family use and would not be used for rental purposes.[7] The plaintiffs did not appeal or otherwise challenge the validity or imposition of either condition. Thereafter, in 1990, the plaintiffs moved out of the home and started renting the property to various tenants. On May 20, 1996, Peter Marsala, Fairfield's zoning enforcement officer, issued to the plaintiffs an order to comply that indicated that the plaintiffs were violating the board's conditional approval by renting the home and

---

[6] It is undisputed that the plaintiffs' lot consists of 3979 square feet, although the zoning regulations applicable to the Fairfield beach district require 9375 square feet. The record does not disclose whether other lots in the beach district are similarly nonconforming. We note, however, that in their original application for a variance the plaintiffs asserted that "[a]n examination of the Assessor's map along the entire length [of Beach Road, on which the plaintiffs' property fronts] would reveal that the average lot is only 30-50' in width and is nonconforming according to present zoning regulations."

[7] "Property located within the beach district in Fairfield is subject to § 11.1.1 of the Fairfield zoning regulations, which provides in relevant part: 'A single detached dwelling for one family . . . [and] no dwelling or dwelling unit in the Beach District may be occupied by more than four (4) unrelated persons.' The plaintiffs' property is located within the beach district." *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 562 n.4.

ordered the plaintiffs to have the tenants vacate the subject property.

"Thereafter, on June 3, 1996, the plaintiffs filed an application with the board requesting that the board invalidate the no rental condition and, thereby, reverse the order to comply. On August 1, 1996, the board conducted a public hearing and denied the plaintiffs' application.[8] The plaintiffs appealed from the board's decision to the Superior Court on August 21, 1996, pursuant to General Statutes § 8-8 (b). The Superior Court concluded that the plaintiffs' failure to file an appeal challenging the validity of the no rental condition within fifteen days from the date when notice of the board's decision was published in 1986 deprived the court of subject matter jurisdiction to entertain the appeal." Id., 561–63.

In addition, certain other sets of facts are undisputed. The first involves the extent and context of the variance at issue as it is currently maintained. The variance permitted the plaintiffs to reduce the required side setback line from 7 feet to 3.2 feet, thus giving them an additional 3.8 feet of footprint and adding 59.6 square feet to their house. In this connection, we note that the variance also gave the plaintiffs permission to convert the house from a seasonal cottage to a year-round dwelling by

---

[8] "The board, in its denial of the application, stated the following reasons: 'The Board felt that the [board] in 1986 did not attach the condition to the variance as it was offered by the applicant on the [applicant's] application for a variance and the application was basically approved as submitted. It would be absurd to now allow the applicant to come forward and simply say we did not mean what we said when we originally applied for the variance or that we have now changed our mind. This Board further finds that because of the proximity of the houses in the beach section it does create a uniqueness and because of its uniqueness this condition of family use only can be defended as it does promote the public health of the neighborhood, it promotes the general welfare of the neighborhood and it does in fact conserve the value of the buildings located in the neighborhood.'" *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 562–63 n.5.

enclosing the open porch and adding a one-story addition in order to enlarge the bathroom and construct a furnace room. At oral argument before this court, the parties informed us that, at the time the variance was granted, applicable zoning regulations permitted only seasonal use of the plaintiffs' property. The parties further informed us, however, that the zoning regulations have since been amended to eliminate the prior seasonal restriction, thereby permitting year-round use.[9] Thus, under the current zoning regulations, the plaintiffs' house, as well as all of the other houses in the Fairfield beach district, may now be used year-round irrespective of the variance and its original conditions.

Second, the property in question is located within the Fairfield beach district, which is subject to § 11.1.1 of the Fairfield zoning regulations. Section 11.1.1 of the Fairfield zoning regulations imposes the following limitations: "A single detached dwelling for one family . . . [and] no dwelling or dwelling unit in the Beach District may be occupied by more than four (4) unrelated persons." Thus, there is nothing in the zoning regulations that prohibits either the plaintiffs or any other property owners in the beach district from renting their houses to others. Moreover, there is nothing in our zoning statutes that, at least specifically, permits such a flat prohibition.

The third set of facts involves the absence from the applicable zoning restrictions of any provision limiting occupancy to "families."[10] The only restriction in this

---

[9] The record does not reflect, however, precisely when that amendment to the zoning regulations took effect.

[10] The parties assume that the zoning restriction to "[a] single detached dwelling for one family" refers, not to the persons occupying the house, but instead to the type of house, namely, a single-family type dwelling. Indeed, this is the only plausible interpretation, given the limitation in the next sentence of the zoning regulation to occupancy by not "more than four (4) unrelated persons." See Fairfield Zoning Regs., § 11.1.

regard is in § 11.1.1 of the Fairfield zoning regulations that "no dwelling or dwelling unit in the Beach District may be occupied by more than four (4) unrelated persons." Thus, presumably all other property owners in the beach district are permitted, and but for the no rental condition in question the plaintiffs would be permitted, to rent their houses to four friends or, for that matter, to four individuals who do not even know one another but who are willing to share a beach rental for the summer—or even for the entire year. In fact, *all* the property owners in the beach district, *including* the plaintiffs, could legally *sell* their properties to four such individuals. The point is that the town has not seen fit to limit occupancy in the beach district beyond these two elements: (1) no more than four unrelated persons; and (2) occupying a single-family type structure.

With this undisputed factual background in mind, we turn to the legal standard that controls the present case. In *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992), we held that the plaintiff, "having secured [certain zoning] permits in 1983 subject to condition seven and not having challenged the condition by appeal at that time, was precluded from doing so in the 1986 enforcement proceedings at issue in this case." Two considerations, which are relevant to the present case,[11] led to that conclusion.

First, we reasoned that the rules requiring a contemporaneous appeal from the imposition of a zoning condition, and thus depriving a trial court of subject matter jurisdiction over a subsequent challenge, rest "on the need for stability in land use planning and the need for justified reliance by all interested parties—the inter-

---

[11] A third consideration was specific to the facts of *Upjohn Co.*; *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 103; and is inapplicable to this case.

ested property owner, any interested neighbors and the town—on the decisions of the zoning authorities." Id. Second, we noted that "there are limits to the notion that subject matter jurisdictional defects may be raised at any time"; id., 103; and that those limits applied to that case because "[t]he lack of jurisdiction, if any, was far from obvious, [the plaintiff] had the opportunity to challenge it at the time, and we perceive[d] no strong policy reasons to give [the plaintiff] a second opportunity to do so now." Id., 104.

Despite this conclusion and reasoning, however, we "recognize[d] . . . that there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, *or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy.*"[12] (Emphasis added.) Id., 104–105. We conclude that, under the facts of the present case, the continued maintenance of the no rental condition violates our strong public policy against restrictions on the free alienability of property.

We begin by emphasizing that, under this prong of the *Upjohn Co.* formulation, we focus, not on the state of affairs that existed when the condition at issue originally was imposed, but on the current state of affairs in which the condition is being enforced. Thus, in the present case, we do not focus, as we do with regard to the first prong of *Upjohn Co.*, on whether the condition

---

[12] In this connection, we note that this statement was not a holding of *Upjohn Co.*, but was dictum. This is apparent from the very next two sentences in the decision: "It may be that in such a case a collateral attack on such a condition should be permitted. We leave that issue to a case that, unlike this case, properly presents it." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105. Nonetheless, we now conclude that the present case properly presents the issue, and we adopt the exception that we suggested in *Upjohn Co.* and apply it to the facts of this case.

was so far outside the normal limits of zoning authority that there could not have been any "justified reliance" on the challenged condition. Id., 105. Instead, we focus on the "continued maintenance" of the condition, and whether, irrespective of the fact that the condition was "previously unchallenged," it nonetheless currently "violate[s] some strong public policy." Id.

It is undisputable that "[i]t is the policy of the law not to uphold restrictions upon the free and unrestricted alienation of property unless they serve a legal and useful purpose." *Peiter* v. *Degenring*, 136 Conn. 331, 336, 71 A.2d 87 (1949). It is also undisputable that this policy is strong and deeply rooted. J. Dukeminier & J. Krier, Property (3d Ed. 1993) p. 223 ("[t]he rule against direct restraints on alienation is an old one, going back to the fifteenth century or perhaps even earlier"). Moreover, it is undisputable that the right of property owners to rent their real estate is one of the bundle of rights that, taken together, constitute the essence of ownership of property. See, e.g., id., p. 86 ("[property] consists of a number of disparate rights, a 'bundle' of them: the right to possess, the right to use, the right to exclude, the right to transfer"). The question that the present case poses, therefore, is whether, under the facts of this case, the continued maintenance of the no rental condition serves "a legal and useful purpose." *Peiter* v. *Degenring*, supra, 336; see also T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 89 n.185 ("[t]he real question is whether a valid zoning objective is being served"). We conclude that it does not.

Owners of a single-family residence can do one of three economically productive things[13] with the resi-

---

[13] The dissent's characterization of the other sticks in an owner's bundle of rights, such as the right to exclude, to occupy, to improve, and the like; see footnote 10 of the dissent; do not undermine our tripartite characterization. All of those individual sticks are, we acknowledge, legal incidents of ownership. From a practical standpoint, however, an owner's *economic* choices boil down to occupying, renting or selling.

dence: (1) live in it; (2) rent it; or (3) sell it.[14] Thus, if the owners of a single-family residence do not choose, for reasons of family size[15] or other valid reasons, to live in the house they own, their only viable options are to rent it or to divest themselves entirely of their ownership by selling it. Stripping the plaintiffs of essentially one third of their bundle of economically productive rights constituting ownership is a very significant restriction on their right of ownership. In addition, when the variance was granted in 1986, the no rental condition deprived the plaintiffs only of the right to rent their property on a seasonal basis.[16] With the change in the zoning regulations, however, the plaintiffs now also have lost the more significant right to rent their property on a year-round basis, resulting in a total loss of the right to rent.

Furthermore, the maintenance of the no rental condition in the present case not only strips the plaintiffs of one of those three options, it also significantly reduces the value of the third because when they do put the house on the market it will necessarily bring significantly less than the fair market value that it would have commanded without the condition. It takes little imagination to predict that the only pool of potential buyers for a house with a no rental condition perma-

---

[14] Of course, such owners also have the economically unproductive option of leaving the residence unoccupied. The law should not, however, encourage economic waste. See the subsequent discussion.

[15] In the present case, the plaintiffs alleged in their complaint that "[c]ommencing in the Fall of 1989, following the birth of a second child, the plaintiffs found it impractical to utilize the premises for their growing family. They thereafter moved out and allowed a family friend to reside on the premises for approximately one year. Following said year they rented to a series of professional and business people on a year-to-year basis." The trial court had no opportunity to consider this allegation because it dismissed the appeal on subject matter jurisdictional grounds.

[16] Indeed, the change in the zoning regulations to permit year-round rental of properties in the beach district is consistent with the public policy favoring the free alienation of property.

nently attached to it would be those persons who are so confident that their life circumstances will never change that, despite the passage of time or changes in health or family circumstance, they will, forever, either occupy the house or sell it. Moreover, those potential buyers also will have to be supremely confident that, when *they* go to sell it, they also will be able to find buyers who have the same degree and type of confidence. Needless to say, this surely will be a very small pool of buyers, thus significantly and adversely affecting the fair market value of the house.

Finally, insofar as this record discloses, the condition limiting the plaintiffs' economic use of the house to occupancy, and prohibiting their economic use of it by renting it, is a limitation that does not adhere to the rest of the property owners in the beach district. Thus, the most obvious consequence of the continued maintenance of the no rental condition on the plaintiffs' property is to give those other property owners a grossly unfair advantage over the plaintiffs in the marketplace. A house, particularly a house located in a beach district, that can never be rented obviously would be significantly less desirable to a potential purchaser than the rest of the houses in the beach district, which do not have such a drastic limitation on their economic use.[17]

Neither the state zoning statutes nor the local zoning regulations place any such limitation on those other property owners. Thus, whatever adverse consequences to other properties may be imagined to flow from occupancy of the houses in the beach district by

---

[17] At oral argument before this court, the defendants informed us that there may be other houses in the beach district that had a similar condition placed on them when variances were granted. The record, however, does not disclose this. Furthermore, the defendants do not represent that such a condition encumbers most or all of the houses in the beach district. Finally, even if there are other such houses, the likely conclusion to be drawn would be that those conditions are invalid as well.

*renters* as opposed to *owners* cannot be reasonably attributable to the plaintiffs' use of their property, because presumably no other properties are so encumbered. Put another way, if all or most of the other houses in the beach district legally can be rented to any group of four or fewer unrelated persons, we fail to see how this condition on this one house conceivably may serve any legal or useful purpose—except to maintain the unfair market advantage that the other unencumbered houses have, a purpose that the law should hardly label as "legal and useful . . . ." *Peiter* v. *Degenring*, supra, 136 Conn. 336.

Finally, the continued maintenance of this no rental condition violates another strong and deeply rooted policy, namely, the policy against economic waste. Our law has long recognized such a policy. See *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 181–82, 365 A.2d 1216 (1976). By artificially and significantly devaluing the plaintiffs' property, as compared to the value of the surrounding parcels, the continued maintenance of the condition in question removes from the marketplace, and thereby from the economy, that significant differential in value. We can see no legal or useful purpose in doing so. The consequence of such conduct is economic waste.

We acknowledge that permitting the plaintiffs to challenge the condition now means that they will receive what could be regarded as a windfall, because they secured a variance in 1986 coupled with the no rental condition, and it is possible that, had the condition not been imposed, either the zoning authority might not have granted the variance[18] or an aggrieved neighbor

---

[18] In this regard, however, we note that, in the present zoning proceedings, the board stated: " 'The [current] Board felt that the [board] in 1986 did not attach the condition to the variance as it was offered by the applicant on the [applicant's] application for a variance . . . .' " *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 562 n.5.

might have successfully challenged the granting of the variance by way of appeal at that time. Moreover, for the period between 1986, when they secured the variance, and whenever the zoning regulations were amended to eliminate the seasonal use restriction on the beach district, the plaintiffs had the full benefit of the variance. That, however, does not alter our conclusion, however, for two reasons.

First, whenever the law permits a previously imposed condition to be challenged collaterally—as the dictum in *Upjohn Co.* suggested and as we now hold—some similar windfall is afforded the property owner. Indeed, subsequent to our decision in *Upjohn Co.* we implicitly permitted a condition that was personal to the property owner to be challenged collaterally. See *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 670 A.2d 1271 (1996). Thus, the presence alone of such a windfall cannot be enough to preclude such a collateral attack because it is inherent in the *Upjohn Co.* formulation. Second, on the facts of the present case the windfall amounts to: (1) an additional 3.8 feet of width and 59.6 square feet to the plaintiffs' house; and (2) the full use of the variance for a finite period of time, namely, from 1986 to whenever the zoning regulations were amended. Against this, however, must be balanced the current effects of the condition. Those effects are: (1) the drastic and direct restriction on the alienability of the plaintiffs' property; (2) its grossly unfair consequence, when compared with the freedom of alienability of the other property owners in the beach district; and (3) the fact that the restriction is, unlike the second part of the windfall, temporally unlimited—in fact, permanent. This balance leads us to conclude that the no rental condition is so restrictive of the plaintiffs' ability to alienate their property that it outweighs the public policy considerations underlying the bar on collateral

attacks.[19] We need not, and do not, decide whether a no rental condition may never be valid in the zoning context. Compare *Kirsch Holding Co.* v. *Manasquan*, 59 N.J. 241, 281 A.2d 513 (1971) (invalidating regulation prohibiting rental to groups of persons not meeting statutory definition of family), *United Property Owners Assn. of Belmar* v. *Belmar*, 185 N.J. Super. 163, 447 A.2d 933 (1982) (invalidating regulation prohibiting rental for one year or less when residence not intended to be permanent residence of renter), *Kulak* v. *Zoning Hearing Board*, 128 Pa. Commw. 457, 563 A.2d 978 (1989) (condition to special exception requiring apartment building owner to reside in one apartment did not serve any valid zoning purpose, but owner nonetheless bound because not appealed from when imposed), and 5 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning (4th Ed. Ziegler 2000) § 56A.02 [1] [e], p. 56A-8 ("[t]he principle that zoning enabling acts authorize local regulation of 'land use' and not regulation of the 'identity or status' of owners or persons who occupy the land would likely be held to apply to invalidate zoning provisions distinguishing between owner-occupied and rental housing"), with *Ewing* v. *Carmel-by-the-Sea*, 234 Cal. App. 3d 1579, 286 Cal. Rptr. 382 (1991), cert. denied, 504 U.S. 914, 112 S. Ct. 1950, 118 L. Ed. 2d 554 (1992) (upholding constitutionality of ordinance prohibiting rental of residential property for fewer than thirty days), and *Kasper* v. *Brookhaven*, 142 App. Div. 2d 213, 535 N.Y.S.2d 621 (1988) (upholding ordinance requiring homeowners who apply for accessory rental apartments to occupy principal residence).

It may be that where such a condition is imposed by virtue of a statute or regulation that is of district-wide

---

[19] To the extent that the dissent relies on *Auburn* v. *McEvoy*, 131 N.H. 383, 553 A.2d 317 (1988), we disagree. In our view, a condition that was an " 'out-and-out plan of extortion' "; id., 384; and also violated the state constitution; see part IV B of the dissent; would be sufficiently egregious to outweigh the policy against collateral attacks.

application and is tailored to a specific land use policy; see, e.g., *Ewing* v. *Carmel-by-the-Sea*, supra, 234 Cal. App. 3d 1590 (maintenance of residential character of district by prohibiting very short-term rentals); such a condition might be valid. Where, however, as in the present case, the no rental condition is not district-wide and therefore presumably applies only to the property at issue, thereby affording the other property owners in the beach district a distinct market advantage, and there is no other regulation even approaching its scope or purpose, the continued maintenance of the no rental condition serves no valid purpose, and violates the strong and deeply rooted public policy in favor of the free and unrestricted alienability of property.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings according to law.

In this opinion NORCOTT, PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, J., with whom MCDONALD, C. J., and KATZ, J., join, dissenting. The plaintiffs, Sebastian Gangemi and Rebecca J. Gangemi, claim that: (1) the no rental condition imposed by the defendant, the zoning board of appeals of the town of Fairfield (board), in connection with the board's granting of a setback variance was personal to them and, therefore, void; (2) the board had no jurisdiction to impose the condition; (3) there was no reasonable relationship between the condition and the land use regulatory purpose threatened by the granting of the variance; (4) the condition discriminates against renters and, therefore, is against the strong public policy favoring the development of housing opportunities for all residents and the promotion of housing choice and economic diversity; (5) the condition violates the public policy favoring free and

unrestricted alienation of property; (6) the condition violates public policy in that it violates article first, § 1, of the Connecticut constitution; and (7) the condition violates public policy in that it constitutes a taking of property without just compensation in violation of the federal and state constitutions. On the basis of the foregoing claims, the plaintiffs argue that, although they failed to appeal the imposition of the variance within the statutory time period, they may attack the no rental condition in a collateral enforcement action.

The majority concludes that the no rental condition violates the public policy against unreasonable restraints on alienation, and, therefore, that the plaintiffs' claim is excepted from the general bar on collateral attacks. I respectfully disagree. For the reasons that follow, I do not believe that this case falls within any exception to the bar on collateral attacks.

## I

Regarding the plaintiffs' first claim, I agree with the conclusion of the Appellate Court that, because the no rental condition was not personal to the plaintiffs, it was not invalid under *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857–58, 670 A.2d 1271 (1996). See *Gangemi* v. *Zoning Board of Appeals*, 54 Conn. App. 559, 567–68, 736 A.2d 167 (1999).

## II

I next address the plaintiffs' claim that the imposition of the no rental condition was outside the jurisdiction of the board, thereby permitting the plaintiffs to attack the condition collaterally pursuant to *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992).[1]

---

[1] The Appellate Court characterized as dictum our language in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105, recognizing possible exceptions to the bar on collateral attacks. *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 569 n.7. I disagree. As I discuss more fully later in this opinion, this court clearly indicated in *Upjohn Co.* that its analysis would have been very different had it concluded that there

I first review the law governing the general scope of the board's power. The powers delegated by the state to zoning boards of appeals are set forth in General Statutes § 8-6.[2] This court previously has held that

was an obvious lack of jurisdiction or that the condition was "so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it . . . ." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 105. To that extent, those statements were not unrelated to this court's determination of the issue in that case. Furthermore, this court did not merely make an off hand reference to the abstract possibility of future exceptions to the bar on collateral attacks, but directly addressed the issue and clearly indicated that it would be open to allowing such attacks if certain criteria were met. Finally, none of the parties has argued that permitting collateral attacks on zoning actions in rare, exceptional cases would be ill-considered. As the Appellate Court previously has stated, "it is not dictum when a court of [appeal] intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy . . . . *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 109–10, 674 A.2d 1335 (1996). Rather, such action constitutes an act of the court which it will thereafter recognize as a binding decision. Id." (Internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 435, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

[2] General Statutes § 8-6 provides: "(a) The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on

"[z]oning is an exercise of the police power. Zoning regulates the use of land irrespective of who may be the owner of such land at any given time and is defined as a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of the properties. *State ex rel. Spiros* v. *Payne*, 131 Conn. 647, 652, 41 A.2d 908 [1945] . . . . *Karp* v. *Zoning Board*, 156 Conn. 287, 297–98, 240 A.2d 845 (1968). As a creature of the state, the . . . [town whether acting itself or through its zoning board of appeals] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. *Baker* v. *Norwalk*, 152 Conn. 312, 314, 206 A.2d 428 [1965] . . . *Bredice* v. *Norwalk*, 152 Conn. 287, 292, 206 A.2d 433 [1964]; *State ex rel. Sloane* v. *Reidy*, 152 Conn. 419, 423, 209 A.2d 674 [1965]. In other words, in order to determine whether the [zoning action] in question was within the authority of the [board] . . . we do not search for a statutory prohibition against such an [action]; rather, we must search for statutory authority for the [action]. *Avonside, Inc.* v. *Zoning & Planning Commission*, 153 Conn. 232, 236, 215 A.2d 409 (1965); [accord] *Blue Sky Bar, Inc.* v. *Stratford*, 203 Conn. 14, 19, 523 A.2d 467 (1987)." (Internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 274–75, 545 A.2d 530 (1988).

---

an earlier such application.

"(b) Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."

This court previously has concluded that "[a] zoning board of appeals may, without express authorization, attach reasonable conditions to the grant of a variance." *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975). The power to impose conditions is implied in the power to grant variances. See id. The purpose of a condition, however, must be to ensure that the variance is "in harmony with the general purpose and intent of the zoning ordinance." Id.; see also General Statutes § 8-6 (a) (3).[3]

In *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 100–101, this court recognized the following principles: (1) the authority of a zoning board of appeals to impose conditions on a special permit is limited to the authority delegated to the town, and, therefore, on a direct appeal, this court would invalidate any condition that the agency had no authority to impose; and (2) certain actions by a zoning agency may be attacked after the time period for a direct appeal has lapsed, generally because there has been "defective statutorily required published notice to the public." Id., 101. This court concluded, however, that "[n]either of these principles . . . requires the conclusion . . . that the recipient of a zoning permit that had been granted subject to a condition may accept both the benefits of the permit and the condition attached to it, by failing to challenge the condition by way of direct appeal . . . and then, years later, defend against the enforcement of the condition by attacking its validity ab initio." (Citation omitted.) Id., 101–102.

"[W]e have uniformly held that failure to file a zoning appeal within the statutory time period deprives the trial court of jurisdiction over the appeal. *Cardoza* v. *Zoning Commission*, 211 Conn. 78, 82, 557 A.2d 545 (1989); *Carpenter* v. *Planning & Zoning Commission*,

---

[3] See footnote 2 of this opinion for the text of § 8-6 (a) (3).

176 Conn. 581, 593, 409 A.2d 1029 (1979). We have also consistently held that when a party has a statutory right of appeal from the decision of an administrative agency, [it] may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. *Carpenter* v. *Planning & Zoning Commission*, supra, 598 . . . . Moreover, we have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court. *Haynes* v. *Power Facility Evaluation Council*, 177 Conn. 623, 629–30, 419 A.2d 342 (1979); see *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 418 A.2d 82 (1979). All of these rules rest in large part, at least in the zoning context, on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities. It would be inconsistent with those needs to permit . . . a challenge to a condition imposed on a zoning permit when the town seeks to enforce it [many] years later. See *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission*, 13 Conn. App. 159, 163, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988) (permitting collateral attack on special permit condition would make land use regulation system impractical and unworkable)." (Internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 102–103.

"[T]here are limits to the notion that subject matter jurisdictional defects may be raised at any time. . . . [T]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdic-

tion of the adjudicatory tribunal. [F.] James & [G.] Hazard, Civil Procedure (2d Ed. 1977) § 13.16, [pp.] 695–97; Restatement (Second), Judgments [§] 15 (Tent. Draft No. 5 1978). *Monroe* v. *Monroe*, 177 Conn. 173, 178, 413 A.2d 819 [appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979)]. Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. [F.] James & [G.] Hazard, [supra, § 13.16, p.] 695; Restatement (Second), Judgments, supra [§ 15]. . . . *Vogel* v. *Vogel*, 178 Conn. 358, 362–63, 422 A.2d 271 (1979); see also *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 560, 468 A.2d 1230 (1983); *Daly* v. *Daly*, 19 Conn. App. 65, 69–70, 561 A.2d 951 (1989); *Morris* v. *Irwin*, 4 Conn. App. 431, 433–34, 494 A.2d 626 (1985)." (Internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 103–104.

"[This court] recognize[s], however . . . that there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted." Id., 104–105.

In *Upjohn Co.*, this court considered the validity of a condition to a special permit rather than a condition to a variance; see id., 97; the latter of which is at issue in this case. This court has recognized that the power to impose conditions on special permits, unlike the power to impose conditions on variances, "must be

found in the regulations themselves . . . and . . . may not be altered." (Internal quotation marks omitted.) *Lurie* v. *Planning & Zoning Commission*, 160 Conn. 295, 304, 278 A.2d 799 (1971). I would conclude, however, that there is nothing in *Upjohn Co.* to suggest that this court's reasoning in that case is not applicable to variance conditions. If a condition to a variance does not operate to ensure that the variance is in harmony with the purpose and intent of legitimate zoning ordinances, it is not within the zoning power delegated to the board. See *Burlington* v. *Jencik*, supra, 168 Conn. 509; cf. *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 65, 574 A.2d 212 (1990) (variance condition that is not reasonable is not within power of zoning board of appeals to impose). Under *Upjohn Co.*, if the lack of such power in the present case was obvious, or the imposition of the condition was "so far outside what could have been regarded as a valid exercise of zoning power"; *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105; then I would hold that the plaintiffs may attack the no rental condition collaterally.

This court previously has not considered whether there are circumstances under which a variance condition prohibiting the rental of real property may advance a legitimate purpose or intent of the zoning ordinances and thus come within the purview of the zoning power delegated to the zoning boards of appeal. We have recognized, however, "[t]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . ." (Citations omitted.) *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857; see also *Dinan* v. *Board of Zoning Appeals*, 220 Conn. 61, 66–67 n.4, 595 A.2d 864 (1991) ("the identity of the user is irrelevant to zoning"); *Builders Service Corp.* v. *Planning & Zoning Commission*, supra, 208 Conn. 285 ("[z]oning is concerned with the use of property and not primarily with its ownership" [internal quotation marks omitted]). This

principle derives from the more general principle that "zoning power may only be used to regulate the use, not the user of the land." (Internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, supra, 857, quoting T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 88. These principles suggest that a regulation that limits occupancy of a property to owners of the property is not within the zoning power. This, in turn, suggests that a variance condition that operates to achieve the same end does not advance a legitimate zoning purpose.

The general trend, both in this state and in other jurisdictions, however, has been toward a less strict application of the principle that the zoning power must be used to regulate the use and not the user of the land. See *Dinan* v. *Board of Zoning Appeals*, supra, 220 Conn. 67 (considering validity of ordinance restricting "the term family to persons related by blood, marriage or adoption" and concluding that "[i]f there is a reasonable basis to support the separate treatment for zoning purposes of families of related individuals as compared to groups of unrelated individuals, the broad grant of authority conferred by [General Statutes] § 8-2 to adopt regulations designed . . . to promote . . . the general welfare must be deemed to sanction a zoning regulation reflecting that distinction in the uses permitted in different zoning districts" [internal quotation marks omitted]); id., 66–67 n.4 ("the identity of the user is irrelevant to zoning, but user terminology may be employed to describe particular uses"); *Taxpayers Assn. of Weymouth Township, Inc.* v. *Weymouth Township*, 71 N.J. 249, 259, 275, 364 A.2d 1016 (1976), cert. denied sub nom. *Feldman* v. *Weymouth Township*, 430 U.S. 977, 97 S. Ct. 1672, 52 L. Ed. 2d 373 (1977) (zoning ordinance limiting mobile home units to trailer parks and their use to families in which head of household is at least fifty-two years old is within zoning power as promoting

general welfare); id., 277 (observing that "regulation of *land use* cannot be precisely dissociated from regulation of *land users*" [emphasis in original]); *Bonner Properties, Inc.* v. *Franklin Township Planning Board,* 185 N.J. Super. 553, 572, 449 A.2d 1350 (1982) (zoning ordinance prohibiting certain form of land ownership was within power delegated to municipality under enabling statute); id., 567 (principle that "the zoning power . . . cannot be employed to regulate ownership of land or the identity of its occupants" implicitly overruled); see also 5 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning (4th Ed. Ziegler 2000) § 56A.02 [1] [c], p. 56A-5 ("this ultra vires principle that zoning regulates the use of land and not the status or identity of the owner or person who occupies the land has not always been strictly applied"). These authorities suggest that regulations that restrict forms of ownership and that affect the occupants, rather than the particular use, of a property, may be valid if they are reasonably related to a legitimate zoning purpose. But see *FGL & L Property Corp.* v. *Rye,* 66 N.Y.2d 111, 114, 116, 485 N.E.2d 986, 495 N.Y.S.2d 321 (1985) (recognizing that "it is a 'fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it' " and holding that planning board does not have power to require certain form of ownership).

Although this court previously has not considered the issue, other jurisdictions have considered the application of the principle that the zoning power must be exercised to regulate the use, not the user, to restrictions on the rental of property. A number of courts have upheld such restrictions. See, e.g., *Ewing* v. *Carmel-by-the-Sea,* 234 Cal. App. 3d 1579, 1584, 1598, 286 Cal. Rptr. 382 (1991), cert. denied, 504 U.S 914, 112 S. Ct. 1950, 118 L. Ed. 2d 554 (1992) (upholding constitutionality of ordinance prohibiting rental of residential property for fewer than thirty days as protecting residential

character of neighborhood and having "substantial rela-
tion to the public health, safety, morals or general wel-
fare" [internal quotation marks omitted]);[4] *Kasper* v.
*Brookhaven*, 142 App. Div. 2d 213, 215–19, 535 N.Y.S.2d
621 (1988) (upholding ordinance limiting availability
of permits for accessory rental apartments to those
homeowners who occupy home in which accessory
rental apartment is to be maintained); id., 222 (recogniz-
ing that "many zoning laws extend beyond the mere
regulation of property to affect the owners and users
thereof").

Several courts, however, have invalidated zoning
actions restricting the rental of property. See *Kirsch
Holding Co.* v. *Manasquan*, 59 N.J. 241, 251–52, 281 A.2d
513 (1971) (holding that zoning ordinances prohibiting
rental to groups of individuals not qualifying as families
under statutory definition violates substantive due pro-
cess);[5] *United Property Owners Assn. of Belmar* v.

---

[4] Although the plaintiffs in *Ewing* did not challenge the power of the
municipality to enact the ordinance, the court's analysis paralleled the analy-
sis used in the cases considering ultra vires claims. See generally *Ewing* v.
*Carmel-by-the-Sea*, supra, 234 Cal. App. 3d 1579.

[5] The court in *Kirsch Holding Co.* v. *Manasquan*, supra, 59 N.J. 241, based
its conclusion on the unreasonableness and arbitrariness of the ordinances,
concluding that the ordinances did not "have a real and substantial relation
to the object sought to be attained"; id., 251; and that they were "sweepingly
excessive." Id., 252. The court's reasoning focused on the ordinances' restric-
tive definition of family, rather than on the rental ban. See generally id.,
251–52. To the extent that *Kirsch Holding Co.* may be read as holding that
restrictions on the definition of family are inherently unconstitutional, that
holding has been superseded by New Jersey cases holding that the strict
use, not user principle had been implicitly overruled, and that regulations
on users of land, as opposed to land use, are not inherently ultra vires. See
*Taxpayers Assn. of Weymouth Township, Inc.* v. *Weymouth Township*,
supra, 71 N.J. 277; *Bonner Properties, Inc.* v. *Franklin Township Planning
Board*, supra, 185 N.J. Super. 567.

Nevertheless, the court's reasoning in *Kirsch Holding Co.* is equally appli-
cable to the validity of the ban on rentals, an issue on which there is no
superseding authority. The court in *Kirsch Holding Co.* indicated that "the
evil [sought to be prevented by the ordinances] arises because of the offen-
sive *personal behavior* of many of these unrelated groups"; (emphasis in
original) *Kirsch Holding Co.* v. *Manasquan*, supra, 59 N.J. 253; and that

*Belmar,* 185 N.J. Super. 163, 167, 170, 171, 447 A.2d 933, cert. denied, 91 N.J. 568, 453 A.2d 880 (1982) (invalidating portion of ordinance prohibiting temporary or seasonal rentals except when occupant intends to reside permanently in dwelling as "an extreme limitation on rights of ownership of private property" and arbitrary); *Kulak* v. *Zoning Hearing Board,* 128 Pa. Commw. 457, 462, 563 A.2d 978 (1989) (concluding that condition to special exception to zoning regulations requiring owner of apartment building to reside in one apartment did not serve zoning purpose because "[t]he . . . identity of an apartment occupant obviously has no relationship to public health, safety or general welfare," but holding that, because original owner had not appealed imposition of condition, he nevertheless was bound by it); see also 5 A. Rathkopf & D. Rathkopf, supra, § 56A.02, p. 56A-8 ("[t]he principle that zoning enabling acts authorize local regulation of land use and not regulation of the identity or status of owners or persons who occupy the land would likely be held to apply to invalidate zoning provisions distinguishing between owner-occupied and rental housing" [internal quotation marks omitted]).

In light of the foregoing legal authorities, I would conclude that this court need not decide whether the no rental condition was within the board's power because, even if it is assumed that it was not, the board's lack

land use regulation may not be used to cure such a problem. Id., 253–54. Rather, the court suggested that "obnoxious personal behavior can best be dealt with officially by vigorous and persistent enforcement of general police power ordinances and criminal statutes . . . ." Id., 253.

*Kirsch Holding Co.* was criticized in *Boraas* v. *Belle Terre,* 367 F. Sup. 136, 149 (E.D.N.Y. 1972), a case that ultimately was appealed to the United States Supreme Court. See *Belle Terre* v. *Boraas,* 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974). In the latter case, the United States Supreme Court suggested that the zoning power includes the power to enact an ordinance restricting the definition of family for zoning purposes provided that the ordinance does not infringe upon any fundamental right and is rationally related to a permissible state objective. See id., 9.

of subject matter jurisdiction was not obvious, and the imposition of the condition was not so far outside the authority delegated to the board by the state that any reliance on that condition, and on the plaintiffs' failure to appeal, was unjustified. As I noted previously in this opinion, there are no Connecticut appellate cases considering whether a limitation or prohibition on renting is within the zoning power, and the case law of other jurisdictions is split on the issue. Accordingly, for reasons that I will discuss more fully in part III of this opinion, the board reasonably could have believed that the no rental condition advanced the legitimate zoning purpose of enhancing the residential character of the neighborhood and its year-round stability, a purpose that was threatened by the granting of the variance.

The majority distinguishes the no rental condition from the no rental regulations upheld in other jurisdictions on the grounds that the no rental condition is not district-wide and is not tailored to a specific land use policy. I would note, however, that, although the owner occupancy requirement in *Kasper* v. *Brookhaven*, supra, 142 App. Div. 2d 213, was a district-wide ordinance in the sense that it applied to anyone in the district who wished to maintain an accessory apartment, it operated, in effect, as a condition to a special permit. See id., 215–16 (ordinance allowed maintenance of accessory apartment upon obtaining special permit). Furthermore, the court in *Kasper* found that the owner occupancy requirement had "the permissible legislative purpose of providing occupying homeowners of modest means with additional income for use in retaining ownership of their residences"; id., 223; a purpose *less* related to land use than the purposes advanced by the board in the present case. Accordingly, without necessarily agreeing with the court in *Kasper*, I would conclude that case does support the board's claim that the

imposition of the no rental condition was within the powers delegated to it by the state.

I would conclude that the board reasonably could have believed that the imposition of the no rental condition was within its power. Although, as the plaintiffs note, such a reasonable belief would not have conferred subject matter jurisdiction on the board, it does indicate that any lack of jurisdiction was not obvious and that reliance on the condition by interested parties was justified. I further note that there is no claim in this case that the plaintiffs did not have a prior opportunity to challenge the condition at the time the variance was granted. Finally, I note that the plaintiffs themselves, in their application for a variance, represented that: "Owners intend to use the property for family use only on a [year-round] basis." Interested parties reasonably could have inferred from the plaintiffs' application that the plaintiffs intended to use the property themselves, and not for rental purposes. I recognize, as the plaintiffs note, that their representation that the property would be for family use only did not confer subject matter jurisdiction on the board to limit the use of the property to the plaintiffs. Nevertheless, because the inference that the plaintiffs did not intend to rent the property was reasonable, I would conclude that reliance on the condition was not unjustified.

Accordingly, I would conclude that the no rental condition is not subject to collateral attack on the ground that the lack of jurisdiction to impose it was obvious, or that it was "so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it . . . ." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105.

### III

Relying on *Burlington* v. *Jencik*, supra, 168 Conn. 506, the plaintiffs also argue that, even if the board had

the power to impose a no rental condition, it did not have the authority to do so in this case. Specifically, the plaintiffs claim that the condition had no relationship to the granting of the variance and that, accordingly, they may collaterally attack it. Cf. *Upjohn Co.* v. *Board of Zoning Appeals*, supra, 224 Conn. 105. Because I would not decide, as a general matter, that the board had no jurisdiction to impose the no rental condition, I must address this argument.

In *Burlington* v. *Jencik*, supra, 168 Conn. 507, the defendant property owners sought a variance from the building setback lines in order to build a garage. The zoning board of appeals granted the variance on the condition that the garage would "be used exclusively for the private garaging of automobiles and not for commercial repair work of any type." (Internal quotation marks omitted.) Id. Commercial uses generally were allowed in the zone. See id., 510. The defendants did not appeal from that decision. Id., 508. The property owners built the garage and used it for the storage and sale of merchandise. Id. The town brought an action seeking to enjoin the property owners from using the garage for commercial purposes and prevailed. Id. The property owners appealed to this court. Id.

This court noted that the function of a condition to a variance is to "[alleviate] the harm which might otherwise result" from the granting of the variance without the condition. Id., 509. This court concluded that the condition banning commercial use was in harmony with the purpose of the variance from the setback requirements, which was to relieve intolerable parking conditions in the neighborhood, and upheld it as a valid use of the zoning power. Id., 510–11.

I would not conclude in the present case that the no rental condition was so obviously unrelated to the variance from the setback requirements that the plain-

tiffs should be permitted to attack the condition collaterally. As this court implicitly recognized in *Jencik*, a condition to a variance need not be directly related to the alleviation of a threat to the purposes of the *specific* regulation from which the applicant received the variance. The ban on commercial uses in *Jencik* did not directly further the zoning goals underlying setback requirements. See *Rogers* v. *Zoning Board of Appeals*, 154 Conn. 484, 487, 227 A.2d 91 (1967) ("[t]he obvious purpose of yard requirements and setback lines is to prevent fire hazards, provide for proper drainage and make suitable provision for light and air"). Rather, the imposition of a condition on a variance is a valid exercise of the board's power when the condition is reasonably related to the alleviation of harms to the *general* purpose and intent of the zoning ordinances potentially caused by granting the variance. *Burlington* v. *Jencik*, supra, 168 Conn. 509.

In the present case, the board reasonably could have believed that the no rental condition alleviated the harm caused by permitting the intensification of the plaintiffs' nonconforming use of their property. In granting the variance—which had the effect of permitting year-round use of the property—*only* on the condition that the property would not be rented, the board reasonably could have believed that, even though its action could result in an increase in the population density of the neighborhood during winter months, which the board saw as a harm to the zoning scheme, the condition mitigated that harm by advancing the neighborhood's character as a place for family residences and its year-round stability.[6] On the other hand, had the board

___

[6] I assume that, before the granting of the variance, the plaintiffs' property was used as a summer cottage. In granting the variance with the no rental condition, the board reasonably could have expected that the property would be used by the occupants as a year-round home. As was suggested at oral argument, the board also reasonably could have expected that, had it granted the variance without a no rental condition, the property could be rented to students for nine months of the year and used as a summer residence during the summer months.

granted the variance without the owner occupancy requirement, its action potentially would have contributed to the population density of the neighborhood during the winter months and its instability year round, without any countervailing benefits to the neighborhood. Thus, contrary to the plaintiffs' argument, the board was not necessarily discriminating arbitrarily against families that rent a property in favor of families that own and occupy a property, but, rather, was attempting, at least arguably, to promote continuous use by families on a year-round basis. I would not conclude that this was an obviously illegitimate zoning purpose.[7]

The majority points out that the board stated at oral argument that the zoning regulations were changed

---

[7] The majority states that it "fail[s] to see how this condition . . . conceivably may serve any legal or useful purpose—except to maintain the unfair market advantage that the other unencumbered houses have, a purpose that the law should hardly label as 'legal and useful,'" thus suggesting that the board and the intervening defendants, who are the owners of the property abutting the plaintiffs' property, have a nefarious, unstated motive in opposing the plaintiffs' claims. I note, however, that, although the no rental condition may have some negative effect on the marketability of the plaintiffs' property, that effect hardly could have been the *purpose* of the board or the other property owners in the beach district. First, I note that it was the plaintiffs who offered the condition in exchange for the variance. If the other property owners in the beach district have any interest in the condition at all, it simply is that they believe that the condition will improve living conditions within the beach district. If they are correct, the condition will directly improve their living conditions while they occupy their properties and, admittedly, likely will increase their property values, both of which are legitimate zoning purposes.

I recognize that the plaintiffs bear a burden that some of the other benefited property owners do not bear—although, as the majority notes, an unknown number of other beach district property owners also are bound by similar no rental conditions. See footnote 17 of majority opinion. That was also the case, however, in *Burlington* v. *Jencik*, supra, 168 Conn. 506. Indeed, that always will be the case when a condition is imposed on a variance. Finally, I note that, to the extent that property values in the area generally are enhanced by the existence of no rental conditions on some of the properties, the negative effect of the condition on the value of the plaintiffs' property will be offset to some extent.

after the variance in the present case was granted to eliminate restrictions on year-round use. I first note that the board represented in its brief to this court that, when the variance was granted, § 2.5.1 of the Fairfield zoning regulations governed changes from seasonal to year-round use. Section 2.5.1, however, governs extensions of nonconforming uses in general and does not address the issue of year-round use. I would conclude, therefore, that the record is insufficient for this court to determine whether there was any change in the regulations concerning year-round use and, if so, what that change entailed.

Even if it is assumed, however, that there was such a change, that would not change my analysis. Even if the change in regulations gave the plaintiffs the abstract right to occupy their house year round, without the existence of the setback variance, which enabled the plaintiffs to enlarge a bathroom in order to install a shower, and to install a furnace room, they would not have been able to do so. The essential point is that, regardless of what the regulations allowed for conforming properties, the variance allowed an intensification of the plaintiffs' nonconforming use, and, therefore, the board had the power to impose conditions to alleviate potential harms caused by that intensification. I would conclude that the board reasonably could have concluded that the no rental condition did so.

Furthermore, it is important to emphasize that the board did not single out the plaintiffs' property for special or discriminatory regulation vis-a-vis other neighboring properties or in general, but imposed the no rental condition because the plaintiffs themselves applied to the board for a variance, i.e., special and discriminatory favorable treatment. In my view, under the circumstances of this case, in which the plaintiffs themselves *volunteered* in their application that, if the board were to grant the variance, they would use the

property for family use only, it would be unjustified to allow them to attack that condition now, while allowing them to retain the benefit of the variance.

Accordingly, without deciding whether the no rental condition would be found on a direct appeal to be related to the alleviation of the harm caused by granting the variance or, if not, whether a less restrictive limitation on renting would be permissible, I would conclude that the board reasonably could have believed that the condition advanced the purpose and intent of the zoning scheme, and, therefore, that the absence of any relationship between the condition and the variance was not obvious. Therefore, I would conclude that the no rental condition in the present case does not fall within the narrow exception to the bar on collateral attacks set forth in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105.

IV

I now address the plaintiffs' claim that the no rental condition falls within the exception to the bar on collateral attacks for zoning actions that violate a strong public policy.

A

The plaintiffs first argue that the prohibition on renting is discriminatory against renters and, therefore, in violation of § 8-2 (a),[8] which provides that the regulation

---

[8] General Statutes § 8-2 provides in relevant part: "(a) The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. Such bulk regulations may allow for cluster development as defined in section 8-18. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use

of land shall encourage the development of housing opportunities for all residents of the municipality and promote housing choice and economic diversity. I would follow the Appellate Court's reasoning and conclusion that the plaintiffs do not have standing to raise this claim. See *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 569–70 n.8.

### B

The plaintiffs also argue that the no rental condition restricts their ability to grant a periodic tenancy in their property and, therefore, violates the public policy against "restrictions upon the free and unrestricted alienation of property unless they serve a legal and useful purpose." *Peiter* v. *Degenring*, 136 Conn. 331, 336, 71 A.2d 87 (1949).

I recognize that, to some extent, the no rental condition restricts the plaintiffs' ability to alienate their property. This court implicitly recognized, however, in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 96, that there occasionally will be restrictions, including otherwise improper restrictions, on property rights, that, because of the important public policy favoring reliability and finality of zoning actions, are not subject to collateral attack, even though they probably would be invalidated in a direct appeal. See id., 104–105 & n.6. I would conclude that the no rental condition

of buildings or structures and the use of land. . . . Such regulations shall also encourage the development of housing opportunities, including opportunities for multifamily dwellings, consistent with soil types, terrain and infrastructure capacity, for all residents of the municipality and the planning region in which the municipality is located, as designated by the Secretary of the Office of Policy and Management under section 16a-4a. Such regulations shall also promote housing choice and economic diversity in housing, including housing for both low and moderate income households, and shall encourage the development of housing which will meet the housing needs identified in the housing plan prepared pursuant to section 8-37t and in the housing component and the other components of the state plan of conservation and development prepared pursuant to section 16a-26. . . ."

is not so restrictive of the plaintiffs' ability to alienate their property that that consideration outweighs the important public policy considerations underlying the bar on collateral attacks.

The majority states that, in this case, this court should not "focus . . . on whether the condition was so far outside the normal limits of zoning authority that there could not have been any justified reliance on the challenged condition. . . . Instead, [this court should] focus on the continued maintenance of the condition, and whether, irrespective of the fact that the condition was previously unchallenged, it nonetheless currently violate[s] some strong public policy." (Citation omitted; internal quotation marks omitted.) To the extent that the majority suggests that the considerations of reliance, fairness and finality underlying the policy against permitting collateral attacks of zoning decisions; see *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104 n.6; are not at issue when a decision implicates public policy rather than the limits of zoning authority, I disagree. Nothing in *Upjohn Co.* supports such a distinction. Nor does the case law of other jurisdictions. As I discuss later in this opinion, one court has held that, even when a condition is of a type that, several years after having been imposed, is found to be " 'an out-and-out plan of extortion' " and in violation of the state constitution, the policy favoring finality of zoning decisions operates to bar the property owners from challenging the condition after the time limitation on appeals has expired. *Auburn* v. *McEvoy*, 131 N.H. 383, 384–85, 553 A.2d 317 (1988) (Souter, J.).[9] In *McEvoy*,

[9] As I note in part IV D of this opinion, I would not hold, as the New Hampshire Supreme Court did in *McEvoy*, that, based on this court's decision in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 96, a regulation that constitutes "an out-an-out plan of extortion"; (internal quotation marks omitted) *Auburn* v. *McEvoy*, supra, 131 N.H. 384; is immune from collateral attack. I cite *McEvoy* simply to demonstrate that there is no principled reason to distinguish zoning actions that are ultra vires from actions that violate public policy for purposes of determining whether the interests of finality and fairness preclude a collateral attack. In either case, a zoning

the condition operated to require the property owners to convey 3.3 acres of their property to the town outright. Id., 384. Thus, the property owners in *McEvoy* were deprived of every stick in their bundle of property rights, not, as in the present case, just one.[10] Thus, I would conclude that, regardless of whether the zoning action is alleged to be outside the zoning power or to violate some public policy, this court must weigh the burden imposed by the action against the considerations of reliance and finality underlying the bar on collateral attacks.

In the present case, the public policy at issue is "the policy of the law not to uphold restrictions upon the free and unrestricted alienation of property *unless they serve a legal and useful purpose.*" (Emphasis added.) *Peiter* v. *Degenring*, supra, 136 Conn. 336. As I previously noted, I would conclude that the board reasonably could have believed that the no rental condition did serve a legal and useful purpose. Accordingly, I would conclude that the board reasonably could have believed that the condition did not violate the public policy against restraints on alienation, and, therefore, reliance on the condition was not unjustified under the public policy prong of *Upjohn Co.* Therefore, I would conclude that the plaintiffs cannot prevail on this claim.

## C

The plaintiffs also claim that the condition violates the constitution of Connecticut, article first, § 1, which

action must be egregiously "out of bounds" before a collateral attack will be permitted. I would hold that the no rental condition does not meet that standard in the present case.

[10] In this regard, I note that there are innumerable sticks in the bundle of property rights, e.g., the right to exclude, to occupy the property, to improve the property, to conduct a business thereon, to subdivide, to grant limited interests in the property, etc., and, therefore, the majority's characterization of the plaintiffs' right to rent as "one-third" of their bundle of rights is arbitrary. I fail to see why renting is an economic choice, but subdividing, improving or conducting a business on a property is not.

provides in relevant part: "[N]o man or set of men are entitled to exclusive public emoluments or privileges from the community." The plaintiffs, however, have failed to provide any authority or analysis in support of this claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). Accordingly, I would decline to consider this claim.

## D

Finally, the plaintiffs claim that the no rental condition was an unconstitutional taking under the fifth and fourteenth amendments to the United States constitution, and article first, § 11, of the constitution of Connecticut.[11] I do not agree with the Appellate Court's

---

[11] Because the plaintiffs have not argued that the state constitution affords them a greater level of protection than the fifth amendment takings clause, and because this court never has "interpreted the two provisions to require different analys[e]s"; *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 250 n.16, 662 A.2d 1179 (1995); I assume, for purposes of this opinion, that article first, § 11, provides the same level of protection for property owners as its federal counterpart.

The board argues that the plaintiffs may not raise a constitutional challenge under the appeal procedures set forth in General Statutes § 8-8, but, rather, must bring a separate action for declaratory and injunctive relief. E.g., *Bierman* v. *Planning & Zoning Commission*, 185 Conn. 135, 139–40, 440 A.2d 882 (1981). I disagree. The rationale for that rule is that "a party cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality." (Internal quotation marks omitted.) Id., 139 n.7. Furthermore, a facial challenge to a generally applicable ordinance "could seriously affect the rights of other property owners in the community"; id., 140; and, therefore, procedures that permit notice to and intervention by all interested parties must be used. See id.

In the present case, the plaintiffs have not attacked any ordinance under which they previously had sought relief and are not mounting a facial challenge to a generally applicable ordinance. Rather, they are challenging the constitutionality of a condition to a variance that is applicable only to their

conclusion that, because "the Superior Court lacked subject matter jurisdiction to entertain the appeal, it is unnecessary . . . to address this claim." *Gangemi* v. *Zoning Board of Appeals*, supra, 54 Conn. App. 561 n.3. Although, according to the Appellate Court, the Superior Court did not have jurisdiction to hear the appeal on the ground that imposition of the condition was obviously outside the board's power, an unconstitutional condition may violate strong public policy and, therefore, fall within the public policy exception to the bar on collateral attacks. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105. Accordingly, I would address the plaintiffs' claim that the condition is subject to collateral attack because it is unconstitutional.

I first consider whether an unconstitutional condition automatically should come within the public policy exception to the general bar on collateral attacks. In *Upjohn Co.*, this court implicitly recognized that not every zoning action that restricts property rights, but is not reasonably related to advancing a legitimate zoning purpose and is therefore ultra vires, will be excepted from the general bar on collateral attacks. I see no reason why a different rule should apply to a zoning action that has unconstitutionally infringed upon property rights. Therefore, I would conclude that an unconstitutional zoning action should not be excepted automatically from the bar on collateral attacks.

This conclusion is bolstered by the ruling of the Supreme Court of New Hampshire in *Auburn* v. *McEvoy*, supra, 131 N.H. 383. In that case, the defendant property owners had sought approval for the subdivision of their property. Id. The town's subdivision regulations conditioned approval of a subdivision application

property. Furthermore, notice of the plaintiffs' application to reverse the board's enforcement order was published and interested parties have been allowed to intervene in the case.

on the developer's dedication of at least 5 percent of the total area of the subdivision to the town. Id., 383–84. The subdivision was approved subject to the condition, and the property owners did not appeal. Id., 384. Thereafter, the Supreme Court of New Hampshire ruled in *J.E.D. Associates, Inc.* v. *Atkinson*, 121 N.H. 581, 584, 432 A.2d 12 (1981), that such ordinances violate the state constitution. The property owners sought reconveyance of the property that had been dedicated to the town, and the town brought a declaratory judgment action to determine the rights of the parties. *Auburn* v. *McEvoy*, supra, 384. The trial court ruled against the property owners on the ground of laches; id.; based on a finding "that changed circumstances would render any reconveyance inequitable . . . [because] the subdivision's residents were aware when they purchased their properties that the lot in question was meant to remain available for recreation, and had changed their positions expecting that the lot would remain commercially undeveloped." Id., 385.

On appeal, the Supreme Court of New Hampshire recognized that the purpose of the statutory time limitation for bringing appeals from zoning decisions was to "endue such [decisions] with finality, at least insofar as the [decision] applies a town's land use regulations in the particular instance"; id.; and noted that a broad rule exempting constitutional claims from the time limitation "would be justifiable only if the appeal period . . . imposed an unreasonable restriction on the assertion of constitutional property rights, whereas the [property owners] have proffered no reason to suppose that this is so." Id., 388. Accordingly, the court held that the property owners were barred from bringing the claim. Id.

I am persuaded by the reasoning of the court in *McEvoy*. Nevertheless, our suggestion in *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105,

that there may be exceptional cases in which collateral attacks may be brought against zoning actions that violate strong public policy, would lead me to reject a categorical rule barring collateral attacks on unconstitutional zoning actions. Rather, by analogy to our holding in *Upjohn Co.* that a zoning action that is allegedly ultra vires is subject to collateral attack only when the lack of subject matter jurisdiction is obvious or the action is "so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it"; id., 105; I would conclude that allegedly unconstitutional zoning actions are subject to collateral attack only when the unconstitutionality is obvious, or when the action is so invasive of constitutional property rights that there could have been no justified reliance on it.

Accordingly, I would consider whether the no rental condition is in this category of unconstitutional zoning actions that is subject to collateral attack. The plaintiffs, relying on *Dolan* v. *Tigard*, 512 U.S. 374, 377, 391, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) (considering constitutionality of condition to approval of building permit requiring that landowner dedicate portion of land to public use and holding that there must be " 'rough proportionality' " between dedication and nature and impact of proposed development), and *Nollan* v. *California Coastal Commission*, 483 U.S. 825, 827, 837, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987) (considering constitutionality of condition to approval of building permit requiring that landowner grant public easement across property and holding that unless condition serves same governmental purpose as original building restriction, condition is " 'an out-and-out plan of extortion' " and thus unconstitutional), argue that the no rental condition does not meet the constitutional requirement that a condition imposed by a zoning agency be related to the discretionary benefit that the

agency is conferring. The court in *Dolan* and *Nollan* considered whether exactions, that, in and of themselves, clearly would have been unconstitutional takings; *Dolan* v. *Tigard*, supra, 384; *Nollan* v. *California Coastal Commission*, supra, 831; were constitutional conditions to the approval of building permits when imposed in exchange for the granting of discretionary government benefits. The court concluded that the exactions were unconstitutional takings, because, in each case, there was an insufficient nexus between the condition and the benefit. See *Dolan* v. *Tigard*, supra, 394–95; *Nollan* v. *California Coastal Commission*, supra, 837.

The board argues, however, that, in the present case, the no rental condition was not a per se unconstitutional taking and, therefore, not subject to analysis under *Dolan* and *Nollan*. Although I recognize, as is discussed later in this opinion, that a zoning action that is ultra vires may be an unconstitutional taking per se, I would agree with the board. Analyzing the condition from the perspective of the board's reasonable belief that the imposition of the condition was within its authority, the condition did not constitute a regulatory taking and was not so invasive of the plaintiffs' constitutional property rights that there could have been no justified reliance thereon.

This court previously has held that, "[w]hile [a]ll property is held subject to the right of government to regulate its use in the exercise of the police power; *Figarsky* v. *Historic District Commission*, 171 Conn. 198, 206, 368 A.2d 163 (1976); if regulation goes too far, it will be recognized as a taking. . . . *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1014, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). In analyzing regulatory action to determine whether it goes too far, we are mindful that the difference between a regulation that results in a compensable taking and one that does not

generally is a matter of degree. *Luf* v. *Southbury*, 188 Conn. 336, 349, 449 A.2d 1001 (1982). Although at one extreme a regulation may deprive an owner of the beneficial use of property so as to constitute a practical confiscation, thereby requiring compensation; see *Lucas* v. *South Carolina Coastal Council*, supra, 1015; *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 256, 662 A.2d 1179 (1995); if a regulation results in something less than a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. . . . The financial effect on a particular owner must be balanced against the health, safety and welfare of the community. . . . *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 256; see *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, 480 U.S. 470, 492, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987) (determination of whether regulatory action constitutes taking necessarily requires weighing of private and public interests)." (Internal quotation marks omitted.) *Cohen* v. *Hartford*, 244 Conn. 206, 220–21, 710 A.2d 746 (1998). "[O]ur test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property . . . ." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 253. "[W]e have held that zoning reclassifications can constitute an unconstitutional taking when they leave a property owner with *no economically viable use of his [or her] land other than exploiting its natural state.*" (Emphasis in original; internal quotation marks omitted.) Id., 254.

The no rental condition does not deprive the plaintiffs of all economically viable use of their property. They

may occupy the property themselves or, as the board has noted, they may relinquish the variance and rent it out seasonally. Furthermore, although I would not decide in the present case whether the burden imposed by the condition was balanced by its advancement of a legitimate zoning purpose when the condition was imposed, inasmuch as the absence of any such purpose was not obvious, I would conclude that any effect of the condition on the value of the property is mitigated, at the present time, by the public "need for stability in land use planning and the need for justified reliance by all interested parties . . . on the decisions of the zoning authorities" that underlie the policy against allowing collateral attacks. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 102. Accordingly, because the condition is not an obviously unconstitutional regulatory taking, I would conclude that it is not subject to collateral attack, especially in light of the fact that the plaintiffs volunteered the condition before the board had granted the variance.

I recognize that a zoning action that is beyond the zoning power may constitute an unconstitutional taking, no matter how far it goes. E.g., *Nectow* v. *Cambridge*, 277 U.S. 183, 48 S. Ct. 447, 72 L. Ed. 842 (1928); see also *Port Clinton Associates* v. *Board of Selectmen*, 217 Conn. 588, 600, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991) ("[w]hen the regulation itself is not a 'valid' exercise of the police power, United States Supreme Court precedents imply that no matter how 'far' it goes, the regulation may constitute a taking"). I concluded in part II of this opinion, however, that the board reasonably could have believed that the no rental condition was within its authority to impose, and that the imposition of that condition, therefore, was not an obviously invalid use of the board's power. Therefore, without deciding whether the condition, as an ultra vires action, was an unconsti-

tutional taking under *Nectow*, I would conclude that, because the board's lack of jurisdiction was not obvious, any such unconstitutionality was not obvious.

In sum, I would conclude that the no rental condition does not fall within any of the exceptions to the bar on collateral attacks of zoning actions, and that the trial court, therefore, lacked subject matter jurisdiction to entertain the plaintiffs' appeal.

Accordingly, I respectfully dissent.